UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUIS M. FRYSON,** individually and as representative of a class, | Civil Action No. 07-0164 |
| Plaintiff, | |
| v. | |
| **UDREN LAW OFFICES, P.C.** | |
| Defendant. | |

## Plaintiff's Response To Motion To Dismiss Complaint

### Introduction

Plaintiff's complaint was filed with the Clerk on January 15, 2007, a holiday, by placement in the overnight depository and is time stamped as having been received by the clerk on that date. As such, the complaint was filed within the statute of limitations, and the defendant's argument to the contrary lacks merit.

The defendant's collection letter dated January 16, 2006, which is the subject matter of this suit, was sent to the plaintiff, not his counsel, and overstates the amount plaintiff had to pay to reinstate his mortgage. The letter falsely informed Mr. Fryson that the amount he was required to pay on January 16, 2007, to reinstate his mortgage was $8,543.66, when in fact the actual amount was $2,370.64 less than that. The Fair Debt Collections Practices Act, 15 U.S.C. § 1692e, prohibits

1

debt collectors from misrepresenting the amount of a debt, and the Udren Law Office's collection letter to Mr. Fryson is an obvious violation of the statute.

### **Background**

The plaintiff, Louis M. Fryson, is the owner of a home located at 141 Worrell Street, Chester, PA. The purchase of the house was financed with a mortgage presently held in the name of Mortgage Electronic Registration Systems, Inc. In the fall of 2005, Mr. Fryson fell behind on his mortgage, and the mortgage company hired the defendant Udren Law Offices, P.C. to foreclose on the property.

Sometime in late December, 2005, or early January, 2006, Mr. Fryson requested information from the Udren Law Offices, P.C., regarding what he needed to do to get his house out of foreclosure. This request was made by Mr. Fryson, not his counsel, and the Udren Law Office, P.C., responded on January 16, 2006, by sending a letter directly to Mr. Fryson. The letter, which is attached to the complaint as Exhibit "A," states that the "TOTAL AMOUNT TO REINSTATE" the mortgage is $8,543.66, and specified that "THIS AMOUNT IS GOOD THRU February 15, 2006." Complaint, Exhibit "A," at 2. Further analysis of the letter by Mr. Fryson's counsel revealed that the $8,543.66 figure was incorrect because it included expenses for enforcing a foreclosure judgment even though no judgment had yet been entered against Mr. Fryson. These expenses include the sheriff's deposit of $2,000, the title bringdown of $125 and a fee for completing a Rule 3129 affidavit of $125.

Based on this letter, plaintiff filed a complaint against the Udren Law Offices, P.C., alleging a violation of section 1692e of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692e, which prohibits debt collectors from misrepresenting the character, amount or legal status of a debt. The complaint was filed on January 15, 2007, which was a holiday for Martin Luther King's birthday. The clerk's office was closed because of the holiday, requiring counsel to file the complaint in the clerk's night depository box on the first floor of the federal courthouse at 6th and Market Streets in Philadelphia. Along with the complaint, counsel filed a motion for leave to proceed *in forma pauperis* ("IFP"), a civil coversheet and cover letter to the clerk's office. Counsel retained time stamped copies of these documents which are attached hereto and marked Exhibit "P-1" (with respect to the complaint and motion to proceed *in forma pauperis*, only the first pages of these documents are included in the Exhibit). The time stamp from the night depository is located in the upper left hand portion of the face of the complaint and clearly states that the document was received by the clerk's office on January 15, 2007, at 5:43 p.m.

The court acted on the IFP request immediately and issued an order granting the motion on January 17, 2007. Although the complaint had already been time stamped as having been received on January 15th, the clerk apparently saw fit to mark the complaint as filed on the 17th in recognition of the court granting Mr. Fryson's request to proceed *in forma pauperis*.

## Argument

I. STANDARD OF REVIEW.

The defendant's statement of the standard of review is fair enough, though the defendant fails to state that the court can look beyond the complaint when determining the factual basis for its jurisdiction. *Pelham v. United States*, 661 F. Supp. 1063, 1065-66 (D.N.J. 1987). This point is worth noting because the defendant characterizes its statute of limitations argument as jurisdictional in nature.

I. PLAINTIFF'S COMPLAINT WAS FILED WITHIN THE STATUTE OF LIMITATIONS.

The defendant correctly asserts that there is a one year statute of limitations for an action under the Fair Debt Collections Practices Act ("FDCPA"), and plaintiff can accept as true for purposes of argument that a cause of action under the FDCPA arises on the date a debt collector mails an offending collection letter. In the present case, the defendant's collection letter was mailed January 16, 2006, which makes the deadline under the statute of limitations January 15, 2007 (baring application of a rule that would extend the deadline by a day on account of the holiday).

Plaintiff's complaint was filed on the last day of the limitations period on January 15, 2007, by depositing it in the night depository box maintained by the clerk inside the Market Street entrance to the courthouse. The complaint, motion for leave to proceed *in forma pauperis*, civil cover sheet and plaintiff's cover letter, are all clearly marked as having been received by the clerk

on January 15, 2007, at or about 5:43 p.m. Exhibit P-1. An element of confusion is injected in the case, however, because the clerk separately marked the complaint as having been filed on January 17, 2007. January 17th was the day the court granted plaintiff's IFP motion, and the clerk appears to have marked the complaint as filed to signify that it was appropriate to process the complaint on that date in light of the IFP ruling. The clerk already had physical possession of the complaint as of January 15, 2007, when it was left in the night depository.

      The legal question is whether depositing the complaint in the night depository constitutes a filing with the court. Analysis of this question begins with F.R.C.P. No. 77(a) which provides, "[t]he district courts shall be deemed *always open* for the purpose of *filing any pleading* or other proper paper . . . ." *Id.* (emphasis added). Maintaining a night depository box complete with a time stamp is a means of fulfilling the mandate of the rule that the court is always deemed open for the purpose of filing pleadings.[1] Courts that have considered the issue have held that the act of depositing a pleading or other document in a night depository constitutes a filing with the court at the time the document is deposited. *Greenwood v. State of New York*, 842 F.2d 636, 638-39 (2d Cir. 1988) ("papers placed in the night depository are filed with the Clerk"); *South v. Icon Health & Fitness, Inc.*, 1995 U.S. LEXIS 3370, *3-7 (D. Utah 1995); *see also Bourdeau v. Hous. Works, Inc.*, 2001 U.S. Dist. LEXIS 5313, *15-17 (S.D.N.Y. 2001) (complaint deemed filed when presented with IFP application or proper filing fee); *Moffitt v. United States*, 430 F. Supp. 34, 36 (E.D. Tenn.

---

1    The ECF system is another means by which the court is alway open, but local rules do not yet permit electronic filing of a plaintiff's initial complaint.

1976) (complaint deemed filed when left with clerk, even though clerk did not mark complaint as filed until plaintiff turned in a civil cover sheet); *Freeman v. Giacomo Costa Fu Andrea,* 282 F. Supp. 525 (D. Pa. 1968) (noting a number of instances in which documents were held to be filed even though they were delivered after hours or by unconventional means). It is also held that the delay attendant to a court's consideration of an IFP petition cannot render a filing untimely under a statute of limitations; the date of filing is the date plaintiff submits the complaint and IFP motion to the court. *Rosenberg v. Martin*, 478 F.2d 520, 523, 522 n.1a (2d Cir. 1973).

Based on this authority plaintiff submits that his complaint was timely filed on January 15, 2007, when it was deposited in the court's night depository together with plaintiff's IFP motion, civil cover sheet and other procedural forms. There was no deficiency in the filing of the complaint in any respect.

## II. DEFENDANT VIOLATED THE FDCPA BY SENDING A COLLECTION LETTERTO THE PLAINTIFF THAT OVERSTATED THE AMOUNT NEEDED TO REINSTATE HIS MORTGAGE BY MORE THAN $2,000.

Mr. Fryson's federal claim is brought under 15 U.S.C. § 1692e. This statute restricts debt collectors from making false or misleading representations to consumers, and reads as follows:

> § 1692e. False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

6

> . . .
>
> (2) The false representation of--
>
> (A) the *character, amount, or legal status* of any debt;

15 U.S.C. § 1692e (emphasis added).

The Third Circuit Court of Appeals recently examined section 1692e of the FDCPA in *Brown v. Card Service Center,* 464 F.3d 450 (3d Cir. 2006). The court observed that the purpose of the act is to stop abusive collection practices and concluded consistent with that purpose the act must be applied though the eyes of the least sophisticated consumer. The use of the least sophisticated consumer standard assures that the FDCPA protects all consumers, the gullible as well as the shrewd. "That it may be obvious to a specialist or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's 'power to deceive others less experienced.'" *Brown*, 464 F.3d at 453 (quoting *Federal Trade Comm'n v. Standard Educ. Soc'y,*, 302 U.S. 112, 116 (1937)). A statement may run afoul of the least sophisticated consumer standard even though it may not deceive a reasonable consumer, as long as it would be deceptive to an unsophisticated debtor. The standard is also objective. *Id.* at 454 n.2; *Beattie v. D.M. Collections, Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991). A consumer does not have to allege that he or she was actually misled as long as the debt collector's communication is one that would mislead an unsophisticated consumer. *Aronson v. Commercial Fin. Servs.*, 1997 U.S. Dist. LEXIS 23534,

*11 (D. Pa. 1997); *Moore v. Ingram & Assoc., Inc*., 805 F. Supp. 7, 9 (D.S.C. 1992); *Beattie,* 754 F. Supp. at 392.

Turning to the defendant's collection letter dated January 16, 2006, it is easy to conclude that it would mislead an unsophisticated consumer into believing that he had to pay several thousand dollars more than was actually due to reinstate his mortgage. The reinstatement amount is specified on the second page of the letter at the bottom of a column of expenses totaling $8,543.66. Across from the $8,543.66 figure is the statement, "TOTAL AMOUNT TO REINSTATE," Complaint, Exhibit "A", at 2, and on the next line the letter says, "THIS AMOUNT IS GOOD THRU February 15, 2006." *Id.* This language clearly conveys that Mr. Fryson had to pay $8,543.66 to reinstate his mortgage and that the amount was valid on the day the letter was written and would remain valid for a month until February 15, 2006. Any reasonable consumer, much less an unsophisticated consumer, reading this language would understand that the Udren Law Offices was requesting $8,543.66 payable immediately to reinstate the mortgagee.

Someone with a trained eye, however, familiar with foreclosure procedure, can discern that the $8,543.66 figure was grossly overstated. No foreclosure judgment had been entered against Mr. Fryson at the time the letter was drafted (indeed, no judgment has been entered against Mr. Fryson to this day). Complaint, ¶ 17, *see also* Defendant's Motion To Dismiss Complaint, Exhibit "A" (a reprint of the docket from the foreclosure action). Nevertheless, despite the fact the Udren Law Offices had not obtained a judgment, the reinstatement figure includes a number of

costs that are only incurred after entry of judgment. Complaint, ¶ 17. The most significant of these charges is the sheriff's deposit of $2,000. After a creditor obtains a judgment and begins the execution process to sell a mortgagor's property at sheriff's sale, the creditor has to pay the sheriff a deposit generally in the amount of $2,000 to cover the sheriff's expenses for bringing a property to sale, mostly for advertising expenses. Prior to entry of a judgment, no deposit would be paid to the sheriff, and thus this is not an expense that can legitimately be passed on to a borrower.

Several other expenses in the Udren reinstatement letter fall into this same category. The most obvious example is $36 for "Prothonotary-judgment filing." No fee can be due the Prothonotary for filing a judgment that has not yet been entered. Another such fee is $84.64 to stay a sheriff's sale. This sum cannot be due before entry of judgment because a sale cannot yet be scheduled. The charge for $125 labeled "Rule 3129" is also something that cannot come due prior to entry of a judgment. Rule 3129 of the Pennsylvania Rules of Civil Procedure requires a foreclosing creditor to file an affidavit with the sheriff listing all lien holders on a property that has been scheduled for sheriff's sale. Closely related to this charge is $125 for a "Title Bringdown." The title bringdown is a follow-up title search performed after judgment, so the creditor has the information necessary to fill out the Rule 3129 affidavit.

The $8,543.66 reinstatement figure that the Udren Law Office sent Mr. Fryson consisted of $2,370.64 worth of charges that were not then due and are not even due today since no judgment has ever been entered and the property has never been scheduled for sale. Absent

9

specialized knowledge of foreclosure practice, no consumer, even a sophisticated consumer, could know this. The Udren Law Office's request for payment of these sums is highly deceptive. The correct figure Mr. Fryson had to pay to reinstate his mortgage was $6,173.02, and this was an amount that only an attorney would be able to figure out. Any consumer, sophisticated or not, would think he had to pay the full $8,543.66 expressly requested in the letter.

Since the least sophisticated consumer standard is an objective test, plaintiff's complaint does not set forth an averment that Mr. Fryson was actually deceived by the collection letter. Nevertheless, should the court find that the absence of such an averment is critical, the complaint can be amended to include it because Mr. Fryson was absolutely deceived by the Udren collection letter. Mr. Fryson read the letter and believed he had to pay $8,543.66 to get his property out of foreclosure.

Another point that has to be made about the letter is that it was sent to Mr. Fryson and not his counsel. The complaint states that the plaintiff, Mr. Fryson, requested reinstatement information, Complaint ¶ 14, and that the defendant responded to the request by sending a letter directly to the plaintiff. *Id*. ¶ 15. Defendant's argument that Mr. Fryson could not have been deceived by the letter because he came to be represented by counsel is wishful thinking on the defendant's part and ignores the fact that the reinstatement letter was sent directly to Mr. Fryson.

The case cited by the defendant in support of this argument is inapposite. The claim by the plaintiff in *Kropelnicki v. Siegel,* 290 F.3d 118 (2d Cir. 2002), was that the debt collector

made a misrepresentation directly to the debtor's attorney.  The creditor had filed suit against the debtor who had an attorney intercede on her behalf.  The debtor's attorney contacted the creditor's attorney and expressed a desire to resolve the case by negotiation.  The attorney then averred that he made an agreement with the creditor's counsel to contact him before taking a judgment against the debtor.  When the creditor took a judgment anyway, the debtor's attorney filed suit under the FDCPA arguing that the creditor's attorney deceived him in violation of the act.  In the present case, it is Mr. Fryson and not his counsel who was the target of the creditor's deception.

The Udren Law Office's deception is no small matter.  It is serious to misrepresent to a homeowner facing foreclosure that the amount he has to pay to reinstate his mortgage is $2,370.64 more than is actually due.  Homeowners under these circumstances are desperately scrambling to obtain the necessary funds.  They deserve accurate information as a moral imperative much less a legal requirement.  In some instances, homeowners who could successfully reinstate their mortgages will be deceived into foregoing the opportunity.

The deceptive nature of the letter is not remedied by the qualifying language toward the bottom of the page that items marked with an asterisk are "anticipated."  This sentence states that if a sum is "NOT ACTUALLY EXPENDED, [it] WILL BE REFUNDED TO THE MORTGAGOR IMMEDIATELY."  In other words, if the cure amount is less than $8,543.66 the mortgagor will be refunded the difference, but it still conveys to the homeowner that he must pay the entire $8,543.66 to reinstate his mortgage.  It is fair for the Udren Law Offices to inform

borrowers of how the reinstatement amount may increase as time passes, but borrowers also deserve an accurate accounting of the amount due in the present as well. Passing off a potential future reinstatement figure as an amount presently due is deceptive.

The misrepresentation of Mr. Fryson's reinstatement amount was not the result of inadvertent error. It was wrong on its face to bill Mr. Fryson for the expenses of enforcing a judgment that had not yet been entered. The error is unambiguous.

Finally, it is worth noting that this case was not brought without fair warning to the defendant. The Udren Law Offices was sent a demand letter dated November 6, 2006, a copy of which is marked Exhibit P-2. This letter was followed by two phone calls with Stuart Winneg, who represented himself as a managing attorney at the Udren Law Offices. Mr. Winneg defended the January 16, 2006, collection letter and refused to negotiate any settlement. Contrary to defendant's representations, there is no benefit to Mr. Fryson in the foreclosure case as a result of bringing this law suit. Antagonizing the mortgage company's attorney is obviously not a strategy that will make the foreclosure easier to resolve.

## **Conclusion**

For the reasons stated above plaintiff requests that the defendant's motion to dismiss be denied.

/s/Robert F. Salvin
Robert F. Salvin (RFS2522)
COMMUNITY IMPACT LEGAL
SERVICES, INC.
419 Ave. of the States, Suite 201
Chester, PA  19102
(610) 876-0804